IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DAVID NELSON,                                06-CV-1254-BR

          Plaintiff,                         OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


**TIM D. WILBORN**
Wilborn Law Office, P.C.
19093 S. Beavercreek Road
PMB #314
Oregon City, OR 97045
(503) 632-1120

          Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW. Third Avenue, Suite 600
Portland, OR 97204-2904
(503) 727-1053


1 - OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**RICHARD RODRIGUEZ**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff David Nelson seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Social Security Income (SSI) under Titles II and XVI of the Social Security Act for the period between February 14, 2002, and January 13, 2005. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383.

     Following a review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


## ADMINISTRATIVE HISTORY

     Nelson filed for DIB and SSI on February 14, 2002.  Tr. 20, 122-27.[1]  He alleged a disability onset date of April 12, 2000.

---

    [1] Citations to the official transcript filed with the Court on January 29, 2007, are cited as "Tr."

Tr. 20.  His application was denied initially and on reconsideration.  Tr. 20.  An Administrative Law Judge (ALJ) held a hearing on March 3, 2004.  Tr. 623-66.  Nelson; Medical Expert (ME) John R. Crossen, M.D.; Vocational Expert (VE) Scott T. Stipe; and James F. Partlow, a friend of Nelson, testified at the hearing.  Tr. 623-66.  Nelson was represented by an attorney. Tr. 623.

On April 30, 2004, the ALJ issued a decision in which he found Nelson was not disabled.  Tr. 20, 37-44.  The Appeals Council, however, reversed the ALJ's decision and remanded for further administrative proceedings.  Tr. 108-10.

On August 10, 2005, the ALJ held a second hearing.  Tr. 20, 594.  Nelson and Gary Schmidt, a friend of Nelson, testified at the hearing.  Tr. 595.  Nelson again was represented by an attorney.  Tr. 594.

On September 8, 2005, the ALJ issued a decision in which he found Nelson was not disabled between April 12, 2000, his alleged onset date, and January 13, 2005.  Tr. 29-30.  The ALJ, however, concluded Nelson was disabled after his 55th birthday on January 13, 2005.  Tr. 29.  Accordingly, the ALJ found Nelson was entitled to DIB and SSI beginning January 13, 2005, but was not entitled to benefits before that date.  Tr. 29-30.

On August 31, 2006, Nelson filed this action seeking judicial review of the ALJ's decision.

3  -  OPINION AND ORDER

## BACKGROUND

Born on July 13, 1950, Nelson was 55 years of age at the time of the most recent hearing.  Tr. 28, 122.  He is a high-school graduate.  Tr. 28.  Nelson's past relevant work included operating heavy equipment.  Tr. 27-28.

Nelson asserts he has limited intellectual functioning and depression as well as physical limitations as a result of two strokes.  Tr. 138, 416.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 404.1520(a), 416.920(a). Each step is

potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(i), 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's residual functional capacity (RFC), which is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.945(a).

*See also* Soc. Sec. Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Stout*, 454 F.3d at 1052. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(f)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Nelson has not engaged in substantial gainful activity since the onset of his alleged disability. Tr. 17.

At Step Two, the ALJ found Nelson has severe impairments

that include an organic mental disorder/vascular dementia, alcohol abuse, and borderline intellectual functioning.  Tr. 23.

At Step Three, the ALJ found Nelson's impairments do not meet or equal a Listing Impairment.  Tr. 23.

At Step Four, the ALJ found Nelson retained the RFC prior to January 13, 2005, to lift 20 pounds occasionally and ten pounds frequently; to stand, walk, and/or sit for six hours of an eight-hour day; to reach occasionally; and to perform work that occasionally involves public speaking.  Tr. 23-24.  The ALJ also found Nelson has slight limitations in responding appropriately to work pressures and to changes in a routine work setting, and, therefore, would work best alone rather than as part of a team. Tr. 23-24.  The ALJ concluded these limitations would prevent Nelson from returning to his past relevant work as a heavy-equipment operator.  Tr. 27-28.

At Step Five, the ALJ found the Medical-Vocational Guidelines mandated a finding that Nelson was disabled as of January 13, 2005 (Nelson's 55th Birthday).  Tr. 28-29.  The ALJ, however, found Nelson retained the RFC prior to that date to perform several jobs that existed in the national economy such as small-products assembler, electronics worker/packager and inspector, and hand-packager/sealer.  Tr. 29.  Thus, the ALJ concluded Nelson was not disabled prior to January 13, 2005. Tr. 29.

## DISCUSSION

Nelson contends the ALJ erred when he found Nelson was not disabled during the period between April 12, 2000 (his disability onset date) and January 13, 2005.  In particular, Nelson maintains the ALJ erred (1) by improperly evaluating Nelson's credibility; (2) by improperly rejecting the lay-witness testimony of Gary Schmidt and James Partlow, Nelson's friends; (3) by rejecting the medical opinions of Ingeborg Hindel, M.D., and Barbara Gibby-Smith, Psy.D.; and (4) by not finding Nelson's alleged depression was a severe impairment.

**I.  Nelson's Testimony.**

The ALJ's credibility "findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004)(internal citations omitted).

When assessing a claimant's credibility, the ALJ must apply the threshold test articulated in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).  *See also Batson*, 359 F.3d at 1196.  The ALJ first must determine whether there is objective medical evidence of an impairment and whether the impairment could reasonably cause some degree of the claimant's symptom(s).  Id. at 1196.  If the claimant produces evidence to meet this test and there is not

9  -  OPINION AND ORDER

any evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific findings stating clear and convincing reasons for doing so." *Id.* (citations omitted).  The ALJ may use ordinary techniques of determining credibility such as the "claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The ALJ also may consider objective medical evidence and the claimant's treatment history as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

### A. Nelson's Testimony.

Nelson testified at the hearings before the ALJ on March 3, 2004, and August 10, 2005, that he suffered strokes in April 2000 and April 2001.  Tr. 628.  As a result of the strokes, Nelson asserts he is unable to work because of constant dizziness, confusion caused by simple tasks, poor memory, anger brought on by ordinary tasks, and frustration about his overall condition. Tr. 605-08, 615, 627, 636, 645.  According to Nelson, he also has difficulty performing multiple tasks without reminders or instructions, and he fatigues easily.  Tr. 607-08, 610.

Nelson testified he engages in several physical activities

10  -  OPINION AND ORDER

such as working on an old Chevy vehicle in his spare time.
Tr. 604.  Nelson also spends two hours per day twice a week
cutting firewood on his property and can lift pieces of wood
weighing 20 pounds.  Tr. 600-01, 642.  Nelson testified he lives
with his mother and performs tasks for her that include watering
her plants and cutting firewood.  Tr. 600-03, 643-44.  When
Nelson cuts firewood, he uses a chainsaw.  He testified his
mental condition forces him to be very careful, however, and to
work slowly.  Tr. 642-43.

Nelson also testified he is a frequent beer drinker and
consumes two or three beers a day.  Tr. 612-13.  He reported his
doctors know about his drinking and even gave him a beer on one
occasion when he was in the emergency room.  Tr. 613.

**B.   ALJ's Decision.**

The ALJ found Nelson's medically determinable impairments
could be reasonably expected to produce his alleged symptoms.
Tr. 24.  Nevertheless, the ALJ found Nelson's statements
concerning the intensity, duration, and limiting effects of his
symptoms are "not entirely credible."  Tr. 24.  It is undisputed,
however, that the ALJ did not make a finding that Nelson was
malingering.  Thus, the ALJ must provide clear and convincing
evidence for rejecting Nelson's testimony.  *See Batson*, 359 F.3d
at 1196.

The ALJ found Nelson does not believe he has a problem

related to alcohol even though he drinks almost every day and medical records establish alcohol worsens his symptoms.  Tr. 24, 492.  The ALJ cites a progress note from Nelson's treatment at Virginia Garcia Memorial Health Center in which a medical professional opined Nelson's ongoing dizziness is worse when he drinks, "but [he] refuses to give up beer."  Tr. 24, 492.  A claimant's failure to follow treatment recommendations is a factor that legitimately supports an ALJ's finding that a claimant's testimony is not credible.  20 C.F.R. § 404.1529.  *See also Smolen*, 80 F.3d at 1284.  The Court notes, however, the source of the handwritten document on which the ALJ relies is not immediately clear.  Tr. 492.  Thus, the chart progress note may not have been written by a physician.

The ALJ also found Nelson's claims of debilitating fatigue, dizziness, and confusion were not credible because the record indicates Nelson "leads an active lifestyle."  Tr. 24.  For example, Masud Ahmad, M.D., an examining physician, noted on January 31, 2001, that Nelson was "working fairly heavy cutting wood in the forest, walking up and down, carrying wood."  Tr. 24, 447.  Dr. Ahmad also reported, however, that Nelson became somewhat dizzy and unbalanced while physically exerting himself.  Even though Nelson thought it would be dangerous to return to work as a heavy-equipment operator, Lawrence Zivin, M.D., examining physician, reported on January 31, 2001, that Nelson

often cut wood using a chain saw.  Tr. 24, 442.  The Court notes
Nelson acknowledged he used a chain saw, but he also stated he
had to use it carefully and to work so slowly that it was not
possible for him to sell firewood for extra money.  Tr. 642-43.

In addition, the ALJ pointed out that Nelson "has not
reported difficulties with exhaustion and extreme fatigue to any
treating medical source."  Tr. 24.  Nevertheless, Nelson argues
it is a matter of "common knowledge" that brain injuries like the
one he suffered result in physical and mental fatigue.  Nelson
notes Ingeborg Hindel, M.D., one of Nelson's treating physicians,
opined it would be reasonable after a stroke to expect Nelson to
experience substantial difficulty maintaining his stamina and
staving off fatigue if he was working at a full-time job.
Tr. 548.

Nevertheless, the ALJ noted Nelson engaged in a number of
work-related pursuits and strenuous physical activities after his
strokes.  In addition, a progress report dated June 5, 2001, from
Virginia Garcia Memorial Health Center reflected Nelson was
participating in vocational rehabilitation to become an outdoor
photographer.  Tr. 24, 501.  On October 10, 2002, Nelson also
reported to Joe Wood, Psy.D., that he was engaged in "career
related" activities like welding and other metal working.  Tr.
25, 504.  In 2004 Nelson started his own business making plant
hangers, toys, and/or candles.  Tr. 25, 557.  Nelson testified he

never made a profit from these efforts, and they were always merely "on the side."  Tr. 632-34.

In addition, Nelson reported he performed occasional maintenance on a generator when needed.  Tr. 25, 557.  Moreover, Nelson's testimony and medical records from 2004 reflect Nelson generally walked about three miles a day.  Tr. 25, 557, 643.

The ALJ concluded "[t]hese extensive activities, many of which involve hazardous equipment, are not consistent with [Nelson's] allegations of debilitating fatigue, dizziness, and mental confusion."  Tr. 25.  Although Nelson admits he engages in all of the above activities, he asserts the ALJ failed to address or to consider Nelson's diminished ability to maintain quality, pace, and duration of any such activities on a regular basis because of his limitations.  Nelson contends these limitations are at the core of his disability.

Nelson testified too much information or stimulus after his strokes makes him "confused and that transmits to anger." Tr. 644.  For instance, even though Nelson asserted he gathered and cut wood, he only did so for limited periods of about two hours per day twice a week.  Tr. 601.  Moreover, Nelson testified he operates at about 50% of the speed he used to before his strokes, most activities take much longer to perform, and Nelson becomes frustrated and does not finish a task that involves too many details.  Tr. 600-10.

14  -  OPINION AND ORDER

Based on this record, the Court finds even though Nelson can still perform physically demanding tasks, the ALJ failed to consider Nelson's ability to maintain or to persist at such tasks for any significant period.  Thus, the ALJ did not provide legally sufficient reasons for rejecting Nelson's testimony concerning his limitations in maintaining quality, pace, and duration of activities.

Accordingly, the Court concludes the ALJ erred when he rejected Nelson's testimony as "not entirely credible" because he did not provide clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  Lay-Witness Testimony.**

The ALJ must provide reasons germane to each lay witness before rejecting the testimony of the witness, but the ALJ is not required to consider or to address nonprobative information. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Nelson argues the ALJ erred when he rejected the lay-witness testimony of James Partlow and Gary Schmidt, friends of Nelson.

**A.    James Partlow's Testimony.**

James Partlow testified at Nelson's first hearing on March 3, 2004.  Tr. 659.  He had known Nelson for at least ten years and saw him at least three times per week.  Tr. 660. Partlow testified Nelson is almost always bothered by physical or mental pain of some kind; simple activities like unloading

groceries from a car can physically wear him out; and he does many tasks about half the speed he used to.  Tr. 661-62.  In addition, Partlow noticed Nelson has many more problems with his temper since his strokes.  Tr. 662-63.  Partlow also testified he and Nelson each sometimes drink as many as four beers at a time. Tr. 665.

The ALJ rejected Partlow's testimony as "not entirely credible in light of [Nelson]'s daily activities" such as use of a chainsaw, wood cutting and harvesting, metal work, and maintenance activities.  Tr. 25.

**B. Gary Schmidt's Testimony.**

Gary Schmidt testified at Nelson's second hearing on August 10, 2005.  Tr. 616.  He testified he had known Nelson for approximately 40 years and saw him just about every day during the week.  Tr. 617.  Schmidt testified Nelson gets easily "flustered" when asked to do as few as four or five tasks during the course of a day.  Tr. 618.  In addition, Smith reported Nelson gets dizzy and falls down more easily since his strokes. Tr. 618-19.  Nelson also takes frequent naps of varying length. Tr. 619-20.

The ALJ rejected Schmidt's testimony as to Nelson's "confusion and dizziness [as] not entirely credible in light of [Nelson]'s daily activities."  Tr. 25.

16  -  OPINION AND ORDER

C.    **Analysis.**

The Court already has concluded the ALJ erred when he rejected Nelson's testimony on the basis that it was inconsistent with Nelson's daily activities.  The ALJ also rejected the testimony of Partlow and Schmidt on the basis that their testimony was not consistent with Nelson's daily activities. Tr. 25.  As with Nelson, however, the ALJ did not provide legally sufficient reasons germane to Schmidt and Partlow for rejecting their testimony.  Moreover, the testimony of Schmidt and Partlow was consistent with the testimony of Nelson, which lends some weight to the testimony of all three.

Accordingly, the Court concludes the ALJ erred when he rejected the testimony of Schmidt and Partlow because the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record that were germane to each witness.  *See Lewis*, 236 F.3d at 511.

**III. Medical Opinions.**

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the opinion of an examining physician is

uncontroverted, the ALJ must give "clear and convincing reasons" for rejecting the opinion.  *Id*.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  The ALJ must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes*, 881 F.2d at 751.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan*, 169 F.3d at 600-01. A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

### A.   Dr. Hindel.

#### 1.   Dr. Hindel's Opinion.

Dr. Hindel is a treating physician who has treated Nelson since June 2001.  Tr. 547.  In a report dated December 23, 2003, Dr. Hindel opined Nelson's brain injury "makes all kinds of

stress overwhelming." Tr. 549.  According to Dr. Hindel, Nelson

has difficulty integrating and responding to multiple or to

complex stimuli and has trouble with anger management.  Tr. 547.

As noted, Dr. Hindel concluded Nelson's health problems would

worsen if he worked full time and Nelson would experience

substantial difficulty with stamina, pain, or fatigue.  Tr. 548.

Moreover, Dr. Hindel opined Nelson would need to work at a

reduced pace.  Tr. 548.  Dr. Hindel concluded Nelson's depression

and anxiety affect his physical condition.  Tr. 548.  In

addition, Dr. Hindel found alcohol abuse was not a primary or

dominant cause of Nelson's limitations.  Tr. 552.

Dr. Hindel reported Nelson should not twist because it

would cause dizziness, and he should not climb stairs or ladders

because of his poor balance.  Tr. 550.  Dr. Hindel also found

reaching and fingering were affected by Nelson's impairments.

Tr. 550.  Dr. Hindel concluded Nelson can walk without

difficulty, is not limited in his ability to sit during an eight-

hour day, and can lift 20 pounds frequently.  Tr. 549, 551.

**2.  ALJ's Decision.**

The ALJ gave Dr. Hindel's opinion "little weight"

because, among other things, Dr. Hindel did not address the

impact of Nelson's alleged alcohol abuse.  Tr. 26.  The record,

however, reflects Dr. Hindel reported in a written medical

opinion dated January 12, 2004, that she did not think alcohol

19  -  OPINION AND ORDER

abuse was "the primary, dominant cause" of Nelson's disability. Tr. 552.  Thus, even though this is not a comprehensive analysis of the role of alcohol in the context of Nelson's limitations, Dr. Hindel did not "fail to address" Nelson's alcohol consumption.

Moreover, the ALJ rejected Dr. Hindel's opinion based on the ALJ's conclusion that her opinion "is not consistent with [Nelson's] daily activities and treatment record." Tr. 26.  For the same reasons that those activities do not provide a basis for rejecting the testimony of Nelson and other lay witnesses, they do not constitute a sufficient basis for rejecting Dr. Hindel's opinion.

The ALJ also gave Dr. Hindell's opinion little weight based in part on the ALJ's conclusion that Dr. Hindel's opinion conflicted with the opinion of Dr. Wood, who examined Nelson and prepared a Neuropath Screening Report on October 10, 2002. Tr. 26, 502.  On the basis of his examination, medical-records review, and psychological testing, Dr. Wood concluded Nelson is in the borderline range of cognitive ability and his processing speed is only in the second percentile.  Tr. 501-10.  Ultimately Dr. Wood diagnosed Nelson with vascular dementia, alcohol abuse, and borderline intellectual functioning.  Tr. 510.  According to the ALJ, however, Dr. Wood did not find any "limitations in [Nelson]'s ability to understand, remember and carry out simple

instructions."  Tr. 26.  The Court concludes the ALJ's
observation does not accurately represent Dr. Wood's opinion.
Dr. Wood noted Nelson functions in the borderline range of
cognitive ability and concluded Nelson's "insight and judgment
may be slightly limited."  Tr. 503.  Dr. Wood expressly opined
Nelson's working memory tested in the borderline range and
probably is "indicative of decreased ability."  Tr. 510.
Moreover, Dr. Wood concluded Nelson's "immediate memory and
general memory are in the Low-Average Range and may be indicative
of decreased memory ability."  Tr. 510.  While examining Nelson,
Dr. Wood noted Nelson "became somewhat frustrated . . . because
he could not complete the items without difficulty."  Tr. 504.
Nelson also expressed frustration during the session "on about
three occasions."  Tr. 503.  Thus, the record reflects Dr. Wood's
opinion does not contradict Dr. Hindel's opinion.  Tr. 26.

        The ALJ also relied on the opinion of Edmund Torkelson,
D.O., one of Nelson's treating physicians in 2000 and 2001.
Tr. 25-26, 415.  Dr. Torkelson reported Nelson would likely need
vocational retraining.  Tr. 25, 415.  Dr. Torkelson, however,
determined Nelson should avoid using heavy-construction equipment
and performing jobs in which dizziness would be dangerous.  Tr.
25-26, 432.  The ALJ gave Dr. Torkelson's opinion "significant
weight."  Notably, the ALJ did not find Dr. Torkelson's opinion
contradicted Dr. Hindel's opinion even though Dr. Torkelson's

21  -  OPINION AND ORDER

opinion was compatible with that of Dr. Wood.  Tr. 26.

Based on this record, the Court finds the ALJ's rejection of Dr. Hindel's opinion based on the opinions of Drs. Wood and Torkelson and Nelson's testimony as to his daily activities is not supported by the record.  Accordingly, the Court concludes the ALJ erred when he rejected Dr. Hindel's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.  Tr. 26.

**B.    Dr. Gibby-Smith.**

**1.    Dr. Gibby-Smith's Opinion.**

Dr. Gibby-Smith, an examining physician, saw Nelson in February 2004 and conducted numerous psychological tests during her examination.  Tr. 554-62.  She diagnosed Nelson as suffering from major depression together with anxiety, primary insomnia, cognitive disorder, borderline intellectual functioning, hypertension following a stroke, and problems with employment and health.  Dr. Gibby-Smith determined Nelson had global assessment functioning (GAF) scores between 50 and 60 for the year prior to the evaluation.[2]  Dr. Gibby-Smith also diagnosed Nelson with marked limitations in understanding and remembering detailed instructions, the ability to carry out detailed instructions, and

---

[2] The GAF scale is a means of reporting the clinician's judgment of the individual's overall level of functioning on a scale of 1 to 100.  *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV*) 30-32 (4th ed. 1994).

the ability to perform at a consistent pace without an unreasonable number of rest periods. Tr. 26, 253-54. In addition, Dr. Gibby-Smith diagnosed Nelson as being moderately limited in his ability to understand, to remember, and to carry out short and simple instructions. Tr. 26, 253-54.

### 2. ALJ's Decision.

The ALJ accorded "little weight" to Dr. Gibby-Smith's opinion based in part on the contradicting opinion offered by Dr. Crossen, the ME at Nelson's first hearing on March 3, 2004. Tr. 26-27. Thus, the ALJ must provide specific, legitimate reasons for rejecting Dr. Gibby-Smith's opinion. *See Magallanes*, 881 F.2d at 751.

At the March 3, 2004 hearing, Dr. Crossen testified he was surprised that Dr. Gibby-Smith did not diagnose Nelson with a substance-abuse disorder. Tr. 649. Dr. Gibby-Smith, however, concluded Nelson's alcohol consumption only amounted to a medically determinable impairment that does not meet the diagnostic criteria for a Listing Impairment. Tr. 575.

The ALJ found credible Dr. Crossen's opinion that Dr. Gibby-Smith "failed to adequately address [Nelson]'s low scores on a Test of Memory Malingering," which is also known by the acronym TOMM. Tr. 27. The record, however, reflects Dr. Gibby-Smith addressed and explained her conclusions regarding Nelson's TOMM scores. Tr. 560-61. Specifically, she found

Nelson's scores were "positive for memory loss."  Tr. 561.

        As Dr. Crossen testified, he never "had any personal professional contact" with Nelson before the hearing, and, therefore, is a nonexamining physician.  Tr. 645.  *See Lester*, 81 F.3d at 830.  The opinion of a treating physician is favored over the opinion of a nonexamining physician.  20 C.F.R. § 404.1527(d).  The Ninth Circuit recently held "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence."  *Orn v. Astrue*, No. 05-16181, 2007 WL 2034287, at *5 (9th Cir., July 16, 2007)(internal citations omitted). Here the opinion of Dr. Crossen, a nonexamining physician, is drawn from essentially the same data as the opinion of Dr. Gibby-Smith, an examining physician.  Thus, Dr. Crossen's opinion is not a sufficient basis for rejecting Dr. Gibby-Smith's opinion. *Id.*

        The ALJ also relied on Nelson's testimony as to his daily activities as a basis for rejecting Dr. Gibby-Smith's opinion.  Tr. 26.  For the same reasons that Nelson's daily activities did not constitute a legally sufficient basis for rejecting the testimony of Nelson, the testimony of other lay witnesses, and the opinion of Dr. Hindel, these activities are not a legally sufficient basis for rejecting the opinion of

Dr. Gibby-Smith.

Nelson also contends the ALJ erred when he did not include at Step Two Dr. Gibby-Smith's diagnosis of depression as one of Nelson's severe impairments even though there is significant medical evidence in the record to support a diagnosis of depression.  For example, on September 12, 2000, Dr. Torkelson prescribed the anti-depressant Paxil for Nelson's "mood."  Tr. 416.  The records of the Virginia Garcia Medical Center indicate Nelson still was taking Paxil in October 2001, presumably for depression or "mood."  Tr. 497.  Moreover, examining physician Dr. Gibby-Smith diagnosed Nelson with "Major Depression with Anxiety" on February 9, 2004.  Tr. 562.  In addition, even though Dr. Wood reported on October 10, 2002, that Nelson was not depressed, Dr. Wood noted Nelson was still taking Paxil at the time of his visit.  Tr. 503, 509.  Thus, there appears to be conflicting evidence in the record as to the diagnosis of depression.

The Court notes a formal diagnosis of depression was made by Dr. Gibby-Smith as an examining physician.  Tr. 562.  The ALJ, therefore, is required to provide specific, legitimate reasons for not including depression as a severe impairment. *See, e.g., Magallanes*, 881 F.2d at 751 (the ALJ must provide specific, legitimate reasons to reject the contradicted opinion of a treating physician).  The ALJ, however, did not address

Dr. Gibby-Smith's diagnosis of depression.

Based on this record, the Court concludes the ALJ erred when he rejected Dr. Gibby-Smith's opinions without providing legally sufficient reasons supported by substantial evidence in the record for doing so.  Specifically, the Court concludes the ALJ erred when he, in effect, rejected Dr. Gibby-Smith's diagnosis of depression by failing to include depression as a severe impairment at Step Two without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

## REMAND

The decision whether to remand for further proceedings or for the payment of benefits is a decision within the discretion of the Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  This decision turns on the likely utility of further proceedings.  *Id.* at 1179.  The Court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2. When it is not clear whether the ALJ would be required to award benefits if the improperly rejected evidence were credited, the Court has discretion as to crediting the evidence.  *See Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

As noted, the Court concludes the ALJ erred when he rejected Nelson's testimony, the lay-witness testimony of Nelson's friends, and the medical opinions of Drs. Hindel and Gibby-Smith without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

In addition, the Commissioner must identify at Step Five of the sequential analysis jobs that exist in the national economy that the claimant can perform.  Here the ALJ expressly relied on testimony from the VE that a hypothetical person with Nelson's limitations could perform several jobs that existed in the national economy such as small-products assembler, electronics worker/packager and inspector, and hand packager/sealer.  Tr. 29. The VE, however, testified Nelson would not be able to perform

27  -  OPINION AND ORDER

these jobs if Dr. Gibby-Smith's assessment of Nelson's
limitations were fully credited.  Tr. 655.  The VE also testified
Nelson would not be able to perform these jobs if he was
frequently irritable, had vocal outbursts, had marked problems
with fatigue, and was limited with pace as testified to by Nelson
and his friends.  Tr. 656-57.

Thus, viewing the record as a whole, if the ALJ had included
in his hypothetical the limitations testified to by lay witnesses
and reflected in the medical opinions that the ALJ erroneously
rejected, there were not a significant number of jobs that exist
in the national economy that Nelson could have performed between
April 12, 2000 and January 13, 2005.  Tr. 653-57.  The Court has
reviewed the record and specifically finds the medical evidence,
especially the opinions discredited by the ALJ, establish Nelson
was not able after his onset date to perform the jobs identified
by the VE in response to the ALJ's hypothetical.  If the Court
credits this evidence, the record indicates an immediate award of
benefits is warranted for the period between April 12, 2000, and
January 13, 2005.

Based on this record, the Court, in the exercise of its
discretion, credits the testimony of Nelson, Gary Schmidt, James
Partlow, and the opinions of Drs. Hindel and Gibby-Smith.  *See*
*Connett,* 340 F.3d at 876 (the court may "credit as true" evidence
rejected by the ALJ when the record establishes the ALJ would be

28   -   OPINION AND ORDER

required to award benefits if the evidence is credited).  As a result, the Court finds Nelson was disabled for the period beginning April 12, 2000, and ending January 13, 2005. Accordingly, the Court concludes there would not be a useful purpose in further proceedings and, therefore, remands for an immediate award of benefits.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 21st day of August, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge